Filed 1/2/15  Manner v. Intevac CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID MANNER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>INTEVAC, INC., et al.,<br><br>    Defendants and Respondents. | H038979<br>(Santa Clara County<br>Super. Ct. No. CV188274) |

Plaintiff David Manner brought an action for, among other things, retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940), retaliation in violation of public policy, wrongful termination in violation of public policy, failure to investigate (Gov. Code, § 12940, subd. (k)), intentional infliction of emotional distress, violation of Labor Code section 1174, subdivision (d), and unfair competition (Bus. & Prof. Code, § 17200) after defendants Intevac, Inc., Intevac Photonics, Inc.,[1] (collectively Intevac) and Bill Maffucci terminated his employment.[2]

---

[1]     Although there was a dispute as to whether plaintiff was hired by Intevac, Inc. or Intevac Photonics, Inc., this factual dispute is not relevant to our opinion and we will refer to them collectively as Intevac.

[2]     The complaint also stated causes of action for age discrimination, failure to prevent discrimination and harassment, breach of contract, and breach of implied covenant not to terminate except with good cause.  Plaintiff does not appeal the trial court's ruling as to these causes of action.

The trial court granted defendants' motion for summary judgment and entered judgment in favor of defendants. We affirm the judgment.

## I. Procedural and Factual Background

### A. Complaint

In November 2010, plaintiff filed his complaint and alleged 11 causes of action. Intevac was named as defendants in all causes of action, while Maffucci was named as a defendant in the third, fourth, ninth, tenth and eleventh causes of action.

Plaintiff alleges the following facts. In July 2009, plaintiff accepted Intevac's offer of employment as a program manager. In September 2009, plaintiff began reporting to Maffucci. On February 26, 2010, Maffucci issued plaintiff an undeserved negative review. At that time, Maffucci told plaintiff, who was then 59 years old, that a "younger, more junior employee was more suited for the position" held by plaintiff.

On March 8, 2010, plaintiff complained to Kimberly Burk, vice president of human resources for Intevac, about Maffucci's unfair performance review and discriminatory remark. Burk told plaintiff that she would conduct an investigation of Maffucci's behavior. After plaintiff made his complaint to Burk, Maffucci's conduct became more hostile. Maffucci treated plaintiff with disdain and withheld resources necessary for him to perform the tasks that Maffucci had assigned to him.

On March 18, 2010, plaintiff lodged another complaint with Burk and informed her that Maffucci was interfering with his ability to perform his job functions and was increasingly hostile toward him. "[J]ust days later, Maffucci demanded that Plaintiff falsify his time records and commit fraud against the federal government" and Maffucci "became extremely agitated when Plaintiff refused, and threatened Plaintiff with termination if Plaintiff refused to follow his instructions to commit fraud."

On April 28, 2010, plaintiff reported to Burk that Maffucci was demanding that he falsify his time records. Burk told plaintiff that she would conduct an investigation. The

2

following day, Intevac terminated plaintiff's employment "ostensibly as a result of a company reorganization." Plaintiff alleges that the termination "was because of his age, retaliation because he complained about age discrimination, retaliation for complaining about retaliation for reporting the age discrimination and harassment, and retaliation for refusing to falsify his time records and for reporting the falsification of time records." After filing complaints with the Department of Fair Employment and Housing against defendants, plaintiff received right to sue notices.

Plaintiff further alleges that he has been and is able to perform all the essential functions of his former position with Intevac.

The third cause of action for retaliation in violation of the FEHA incorporates by reference the previous allegations and alleges that plaintiff suffered adverse employment actions after he opposed and reported unlawful employment practices, discrimination, fraud, and illegal activity. It is also alleged that plaintiff petitioned his superiors, but the retaliation only intensified due to these petitions. Due to defendants' acts, plaintiff suffered damages.

The fourth cause of action for retaliation in violation of public policy incorporates by reference the previous allegations and alleges "[a]dverse employment actions taken by an employer in response to opposing or reporting discrimination, harassment, retaliation, unlawful business practices, fraud or illegal activities" is contrary to public policy in California. It is alleged that plaintiff suffered adverse employment actions because he opposed, reported or refused to engage in unlawful employment practices "based on age and illegal activity." It is also alleged that plaintiff petitioned his superiors, but the retaliation only intensified due to these petitions. Due to defendants' acts, plaintiff suffered damages.

The fifth cause of action for wrongful termination in violation of public policy incorporates by reference the previous allegations and alleges that there is a "public policy against discrimination on the basis of age and for protesting discrimination and

3

against termination of employees who refuse to participate and/or report an activity that would result in a violation of a state or federal statute, or noncompliance with a state or federal rule or regulation." It is also alleged that Intevac terminated plaintiff's employment in retaliation for: complaining about age discrimination, refusing to participate in time-keeping fraud, and reporting time keeping fraud. Due to defendants' acts, plaintiff suffered damages.

The sixth cause of action for failure to investigate (Gov. Code, § 12940, subd. (k)) incorporates by reference the previous allegations and alleges that Intevac was aware of discrimination against and harassment of him, but it failed to investigate and thus caused him to suffer mental distress, loss of earnings and benefits, and job opportunities. It is also alleged that Intevac's acts were malicious and oppressive, thereby entitling him to punitive damages.

The ninth cause of action for intentional infliction of emotional distress incorporates by reference the previous allegations and alleges that defendants caused his employment to be terminated in contravention of public policy and defendant's conduct was intentional, extreme, and outrageous, and done with the intent to cause or with reckless disregard of the probability of causing emotional distress to plaintiff. As a result of defendants' conduct, plaintiff has suffered severe and serious injury to his person and has suffered substantial economic losses. It is also alleged that defendants' conduct was malicious and oppressive, thereby entitling him to punitive damages.

The tenth cause of action for Labor Code violations was brought pursuant to the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.). This cause of action incorporates by reference the previous allegations and alleges that defendants violated Labor Code section 226 by failing to issue properly itemized wage statements to plaintiff as well as to other current and former employees. It is also alleged that defendants failed to keep proper time records regarding plaintiff and other current and former employees as required by Labor Code section 1174. When plaintiff

4

complained about defendants' failure to comply with the Labor Code, defendants retaliated against him.  Plaintiff seeks "to recover penalties as provided by statute." It is also alleged that defendants' conduct was malicious and oppressive, thereby entitling him to punitive damages.

The eleventh cause of action for unfair competition in violation of the Unfair Business Practices Act incorporates by reference the previous allegations and alleges that defendants' violations of the FEHA and the Labor Code constitute violation of Business and Professions Code section 17200 et seq.  It is also alleged:  Intevac bid contracts with public entities when it did not intend to comply with accurate timekeeping and wage reporting of its employees; other companies that bid on these contracts were not successful because defendants were able to outbid them by failing to comply with timekeeping and wage requirements; and defendants were thereby unjustly enriched.

### B.  Summary Judgment Motion

In August 2011, defendants brought a motion for summary judgment or, alternatively, summary adjudication.  They argued that they were entitled to judgment in their favor as a matter of law.  They asserted that the evidence was undisputed:  they terminated plaintiff's employment for a legitimate, nondiscriminatory reason and plaintiff could not establish that their stated reason was pretextual; their decision to terminate his employment was based on nonretaliatory factors; they investigated plaintiff's complaints of discrimination and retaliation; their conduct was not extreme and outrageous; plaintiff failed to exhaust his administrative remedies for the Labor Code violations; and plaintiff could not prove that he had suffered damage as a result of a violation of the Labor Code by Intevac.

To support their summary judgment motion, defendants submitted plaintiff's deposition testimony and the declarations of their counsel, Maffucci, Burk, and others, which included the following facts.  In July 2009, Intevac hired plaintiff as a senior

program manager. Intevac terminated his employment on May 4, 2010. Plaintiff was responsible for, among other things, reporting to management on the status of projects that he was managing and forecasting the revenue that Intevac would derive from its work on those projects.

Plaintiff's forecasts often varied substantially from week to week and plaintiff did not warn his manager, Maffucci, that these forecasts were likely to change. Maffucci was not satisfied with plaintiff's job performance, because plaintiff failed to describe the status of his projects thoroughly in discussions with him and was unable to answer questions about his projects. Maffucci was also not satisfied with the variability and inaccuracy of plaintiff's revenue forecasts. Other Intevac executives, including Joe Pietras, executive vice president, and David Kelly, vice president of engineering, expressed their dissatisfaction with plaintiff's job performance to Maffucci.

On February 26, 2010, Maffucci presented plaintiff with a written evaluation that was critical of his job performance. On March 8, 2010, plaintiff provided Burk with a memorandum in which he disputed Maffucci's evaluation of his job performance and complained about Maffucci's comment. At that time, plaintiff wrote that Maffucci "stated that a younger, more junior employee could easily do this job better." Plaintiff later acknowledged that this statement was not a quote, but he did not recall the exact words that Maffucci had used. Plaintiff could not recall whether Maffucci "used the word 'young' or 'younger' in his statement" to him. However, plaintiff thought "it was clear [Maffucci] thought a younger person could do it." The closest that plaintiff could recall of the actual words that Maffucci used was that "a junior person could do better."

In response to plaintiff's complaint, Burk interviewed plaintiff on multiple occasions, Maffucci, Mike Mohawk, Kelly, Wes Otto, and Chris Fordham. She also reviewed documents and correspondence that had been provided by plaintiff and other witnesses. After evaluating the information, Burk concluded that Maffucci had not

6

engaged in discrimination or harassment and that he had not considered plaintiff's age in evaluating his job performance or making any decisions about him.

On March 12, 2010, plaintiff reported to Maffucci that his most recent revenue projection for the ISIE4000 program was inaccurate and needed to be revised. Maffucci expressed his concern that plaintiff's estimates of revenue on the program had declined $189,000 from February 17, 2010 to February 24, 2010, another $51,000 on March 3, 2010, and another $105,000 on March 10, 2010. Maffucci asked plaintiff to explain the changes in his estimates and to answer specific questions about the program by March 15, 2010. Plaintiff requested an additional day to consult with other employees. Though Maffucci did not think that plaintiff needed to consult with others to complete the analysis, he granted plaintiff's request. Plaintiff provided his response on the evening of March 16, 2010. His estimate of the revenue for the ISIE4000 program at that time had changed by $127,000 from the previous week, which prompted further concerns and questions for Maffucci.

On March 18, 2010, plaintiff complained to Burk that Maffucci was retaliating against him for his previous complaint by continuing to criticize his job performance. Burk interviewed plaintiff and Maffucci and reviewed relevant documents. After conducting her investigation, Burk concluded that Maffucci was dissatisfied with plaintiff's job performance, was not basing his criticisms on plaintiff's earlier complaints about him, and had not engaged in retaliation. Burk informed plaintiff and Maffucci of her conclusions.

Prior to filing his lawsuit, plaintiff did not provide Intevac with written notice of the specific Labor Code provisions that he alleged Intevac had violated or any explanation of the facts and theories that supported his allegation that Intevac had violated the Labor Code.

7

## C.  Summary Judgment Opposition

Plaintiff filed opposition to the motion for summary judgment, or alternatively, summary adjudication.  He argued that there were triable issues of fact as to all of his causes of action.

Plaintiff submitted the deposition testimony of plaintiff, Maffucci, and Burk and the declarations of plaintiff and his counsel, which included the following facts.  Plaintiff disputed that his forecasts varied substantially from week to week.  Plaintiff also disputed that Maffucci was generally unsatisfied with plaintiff's job performance while he served as his manager.  Plaintiff presented evidence that he told Maffucci that he "wasn't getting much cooperation from engineering and the engineers for putting [his] estimates together."  Maffucci told him that he would talk to Kelly, but plaintiff did not see a change.  Prior to his performance review, Maffucci "was unhappy that the revenue estimates would go high and low.  [Plaintiff] would explain to him about why that was happening."  But plaintiff never "heard anything from him that [he] understood about how to correct that."  Maffucci told him that he "had to find a way to make more accurate estimates."  On March 12, 2010, which was after the performance review, Maffucci set forth in an e-mail exactly what he wanted from plaintiff, which was "the first time that [Maffucci] felt that [he] had to do it at the level that [he] did."

Plaintiff disputed that other Intevac executives were dissatisfied with his job performance.  He presented evidence that Mohawk had no criticisms of his job performance.  According to Maffucci, there had been no complaints from customers about plaintiff.  Two Intevac customers sent positive e-mails to plaintiff in October 2009.  One of these customers complimented plaintiff for "being such a great host" in March 2010.

Plaintiff disputed whether Burk's investigation was adequate.  He argued that her investigation was inadequate, because:  (1) her procedures were the same for sexual harassment, discrimination, and retaliation claims; (2) she acknowledged that plaintiff

8

might have given her names of individuals to contact, but she could not remember them at the time of her deposition; and Burk's notes indicate that another manager suggested that Maffucci may have discriminated against another employee as well.

Plaintiff disputed that his March 18 complaint of retaliation was based on Maffucci's criticism of his job performance. Plaintiff presented evidence that after the initial complaint, Maffucci became "very difficult," criticized him, and gave him many small jobs that could not be completed in the time that Maffucci wanted. He believed that Maffucci knew that he did not have adequate time to complete a job.

Plaintiff disputed that Burk investigated his retaliation claim. He asserts that she sat in a meeting between plaintiff and Maffucci and "[i]f she had conducted an investigation, she would have discovered that it was evident to other employees that Maffucci was retaliating against him."

Plaintiff disputed Burk's conclusions regarding his retaliation claim. He argued that defendants were required to document performance issues prior to termination, which they failed to do until after he claimed discrimination.

Plaintiff also submitted additional facts and supporting evidence in opposition to defendants' motion for summary judgment or, alternatively, to summary adjudication.

As a result of its government contracts, Intevac was required to accurately maintain, record, and report its employees' time records.

Plaintiff initially reported to Mohawk until Intevac went through a reorganization in September 2009. After the performance review, Maffucci told plaintiff that he would be placed on a performance improvement plan (PIP), but plaintiff never received the PIP.

Defendants presented conflicting "'evidence,'" that is, that "Maffucci claims he wanted to place Dr. Manner on a [PIP] and give him a second chance. He claims to have had no authority to terminate Plaintiff, even if he had wanted to at that time, and that Kimberly Burk was the one with the authority and it was her decision to terminate

9

Dr. Manner. On the other hand, Kimberly Burk testified that it was Maffucci who wanted to terminate Plaintiff and he had full authority to do so."

Maffucci was aware that defendants were required to comply with government standards when he told plaintiff to alter his timecard. Plaintiff presented evidence that Maffucci was familiar with "pricing regulations for doing government pricing." According to Maffucci, the government had conducted timecard auditing at Intevac prior to termination of plaintiff's employment and he was not involved in gathering information for the Intevac audit. When Maffucci was employed by other companies, he was not involved in any government audits of time records. Maffucci also testified that plaintiff's time records were accurate for government contracts. When Maffucci had concerns regarding plaintiff's timecard, he consulted with Burk and Rhonda Faxon, the finance manager.

### D. Defendants' Reply

Plaintiff disputed that his forecasts did not vary substantially from week to week, but he did not present any evidence to support his denial of the stated fact. Plaintiff also did not rebut the fact that Maffucci was not satisfied with his performance. Instead, he offered excuses for his performance and stated that he was unaware of what was required by Maffucci until March 12, 2010.

Plaintiff did not rebut the stated fact that Pietras and Kelly had also expressed dissatisfaction with his work. He presented evidence that Mohawk and some customers had praised his performance.

Plaintiff did not rebut the facts regarding his complaint to Burk on March 8, 2010. He failed to state the basis for his objection to the characterization of the evidence.

Plaintiff did not dispute that Burk conducted an investigation. He argued that the investigation was inadequate, but his arguments were not supported by the evidence on which he relied.

10

Plaintiff failed to rebut the stated fact regarding his March 18 claim. He merely provided more detail information regarding Maffucci's criticisms.

Plaintiff did not rebut the stated fact that Burk conducted an investigation of his retaliation claim. He relied on facts of which he was aware, that is, that Burk participated in a meeting with him and Maffucci. He failed to present any evidence to support his conclusion that she did not conduct an investigation.

Plaintiff failed to rebut the facts regarding Burk's conclusions following her investigation of his retaliation claim.

Defendants admitted that Maffucci told plaintiff that he would be placed on a PIP and that he was never issued a PIP. However, defendants asserted that the failure to place plaintiff on a PIP did not represent a deviation from any established protocol.

Defendants agreed that Maffucci recommended that plaintiff's employment be terminated and Burk approved the recommendation and decided when it should occur.

In mid-to-late April 2010, Maffucci disapproved a timecard that plaintiff had submitted for the previous week. It reflected four hours on Friday of that week. Maffucci believed that plaintiff's timecard should have accounted for eight hours until Greg Swyt, the controller, informed him that exempt employees did not need to account for eight hours of time each day.

### E. Trial Court's Ruling

The trial court found that defendants met their burden to show a legitimate, nondiscriminatory reason for the termination of plaintiff's employment and plaintiff failed to produce sufficient evidence to show that defendants' showing was untrue or pretextual. Thus, the trial court granted defendants' motion for summary adjudication of the causes of action for retaliation in violation of the FEHA (third), retaliation in violation of public policy (fourth), and wrongful termination in violation of public policy (fifth).

11

The trial court granted defendants' motion for summary adjudication as to the sixth cause of action for failure to investigate in light of its ruling on the first cause of action for discrimination that the plaintiff did not suffer unlawful discrimination. The trial court also found that defendants did not engage in extreme and outrageous conduct and granted their motion for summary adjudication as to the ninth cause of action for intentional infliction of emotional distress.

The trial court granted defendants' motion for summary adjudication of the tenth cause of action for violations of the Labor Code on the ground that plaintiff failed to exhaust his administrative remedies. The trial court also granted defendants' motion for summary adjudication as to the eleventh cause of action for unfair competition because plaintiff failed to show that defendants had violated any law.

## II. Discussion

### A. Summary Judgment Motion

#### 1. Standard of Review

" ' "Appellate review of a ruling on a summary judgment or summary adjudication motion is de novo." ' " (*Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 993.) "[T]he party moving for summary judgment bears the burden of persuasion that there are no triable issues of material fact and that [the moving party] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.)

12

## 2.  Retaliation in Violation of the FEHA

The FEHA prohibits an employer from retaliation based on an employee's filing of a complaint of age discrimination or other "practice[] forbidden under this part . . . ." (Gov. Code, § 12940, subd. (h).)  In California, courts employ a three-prong test to resolve the FEHA claims.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).)  First, the employee must establish a prima facie case.  (*Ibid.*)  The employee "must at least show ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .'  [Citation.]"  [Citation.]' " (*Id.* at p. 355.)  An employee establishes a prima facie case of retaliation when:  he or she was engaged in a protected activity; the employer subjected him or her to an adverse employment action; and there is a causal link between the protected activity and the employer's action.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

Once the employee satisfies this initial burden, the burden then shifts to the employer to show that its action was motivated by legitimate, nonretaliatory reasons.  (*Guz, supra*, 24 Cal.4th at pp. 355-356.)  If the employer meets this burden, the employee then must show that the employer's reasons for the adverse employment action were untrue or pretexts for discrimination, or produce other evidence of intentional discrimination or retaliation.  (*Id.* at p. 356.)  "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory or [retaliatory]."  (*Id.* at p. 361.)

Plaintiff contends that defendants did not meet their burden in establishing that his employment was terminated for legitimate, nondiscriminatory motives.

Plaintiff first claims that portions of defendants' evidence constituted "improper opinion testimony," were "inadmissible conclusions and hearsay," lacked "personal knowledge and foundation," and were "vague as to the terms 'substantially' and

13

'reasonable time.'" However, plaintiff has failed to cite any authority to support his claims regarding the propriety of these objections. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]" (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).) Accordingly, we conclude that plaintiff's evidentiary claims have been waived.

Relying on *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686 (*Mamou*), plaintiff next argues that there were triable issues of fact as to whether Burk or Maffucci made the decision to terminate his employment, whether either influenced the other, and whether either or both acted with retaliatory animus.

In *Mamou*, the plaintiff brought an action for discrimination and retaliation (Gov. Code, § 12940) against his former employer. (*Mamou*, *supra*, 165 Cal.App.4th at p. 713.) In its motion for summary judgment, the employer argued that the two supervisors who held a discriminatory animus were not involved in the decision to terminate the plaintiff's employment. (*Id.* at p. 723.) This court held that there were triable issues of material fact as to whether these two supervisors were involved in the decision. (*Id.* at pp. 724- 727.)

Here, Maffucci testified in his deposition that he told plaintiff that his position was being eliminated and that he was required to obtain Burk's approval before informing plaintiff. Maffucci initially believed on March 4 that "it was worth giving it a shot to try to correct the problems" with plaintiff's performance. However, he changed his mind a week before plaintiff's employment was terminated. At that point, Burk told him that he could not terminate his employment. Maffucci did not know if Burk needed permission from anyone else before plaintiff's employment could be terminated. Maffucci believed that he had input in the decision, but he thought it was Burk's decision. Burk testified that she and Maffucci discussed terminating plaintiff's employment a week before the termination. Maffucci told her at the meeting that he wanted to "release him." Burk then

14

"reviewed everything" and "got back to him." They decided that Maffucci would inform plaintiff in person of the termination because plaintiff was "his employee."

Maffucci's declaration states that he concluded that plaintiff was unable to improve his performance within a reasonable time and decided that he should terminate him. Burk agreed with his recommendation. Burk's declaration states that Maffucci recommended that Intevac terminate plaintiff's employment and she agreed.

Here, there was no dispute that Maffucci recommended that plaintiff's employment be terminated, Burk approved the recommendation and decided when it should occur, and Maffucci told plaintiff that his employment was terminated. Thus, unlike in *Mamou*, there was no triable issue as to the identity of the individuals who participated in the decision to terminate plaintiff's employment.

Plaintiff's reliance on *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95 (*Reeves*) is also misplaced. In *Reeves*, the plaintiff brought an action against his former employer and alleged that his employment had been terminated in retaliation for his complaining about sexual harassment incidents. (*Id.* at p. 100.) The trial court granted the employer's motion for summary judgment. (*Ibid.*) At issue was whether an employer could be found liable for the FEHA violations "where discriminatory or retaliatory actions by supervisory personnel [brought] about adverse employment actions through the instrumentality or conduit of other corporate actors who [might have been] entirely innocent of discriminatory or retaliatory animus." (*Reeves*, at p. 116.) This court concluded that there were triable issues of fact as to whether a manager and an investigator were the means by which the supervisor acted out of discriminatory or retaliatory animus, and reversed the judgment. (*Id.* at pp. 117-121.) Here, in contrast to *Reeves*, both Maffucci and Burk participated in the decision to terminate plaintiff's employment and neither used the other to carry out the termination based on retaliatory animus.

15

Plaintiff argues that "Maffucci did not believe Plaintiff's performance warranted termination and claims it was Kimberly Burk's decision to terminate Plaintiff and that he just went along with her decision. Kimberly Burk, the person to whom Plaintiff made multiple reports of discrimination, harassment and retaliation, instructed Maffucci to start documenting Plaintiff's performance immediately after her first meeting with Plaintiff and did not bother to investigate any further complaints by Plaintiff." The record does not support plaintiff's argument. First, though Maffucci initially thought that plaintiff's job performance would improve, it did not. Thus, Maffucci concluded that his employment should be terminated. Second, Burk conducted investigations of the complaints that plaintiff made on March 8 and March 18, 2010.

Plaintiff next argues that Burk's notes support his claim that his performance evaluation was unfair. According to Burk's notes, Mohawk "[b]elieved that [plaintiff] was [d]oing a good job for him," was "not as strong as Wes but is capable" and plaintiff could not "get the resources he needs . . . ." Thus, plaintiff argues that "[a]n inference can be drawn from the evidence that Kimberly Burk did not act out of nonretaliatory reasons and that either she acted as a 'cat's paw' to effectuate the retaliatory intentions of Maffucci, or acted to carry out her own retaliatory intentions." However, Mohawk had supervised plaintiff only during the first two months of his employment with Intevac. This evidence was insufficient to create a triable issue of fact as to whether Burk possessed retaliatory animus in concluding that Maffucci had not acted improperly.

Plaintiff also argues that he satisfied his burden to show that defendants' reasons for termination of his employment were untrue or pretexts for retaliation. He relies on evidence that "he was not headed for termination, that Maffucci's criticisms were unwarranted, the inconclusiveness of who made the decision to terminate Plaintiff and for what reason, and the timing of his termination."

Plaintiff's argument that he was "not headed for termination" and that "Maffucci's criticisms were unwarranted" was not supported by the record. Though Maffucci did not

16

contemplate termination of plaintiff's employment on February 26, 2010, he informed plaintiff that he would be placed on a PIP due to problems with his performance. However, these problems continued. Four days after plaintiff submitted his March 8 complaint to Burk, plaintiff informed Maffucci that his most recent revenue projection for the ISIE4000 program was inaccurate and needed to be revised. In response, Maffucci expressed his concern that plaintiff's estimates of revenue on the program had declined $189,000 from February 17, 2010 to February 24, 2010, another $51,000 on March 3, 2010, and another $105,000 on March 10, 2010. Maffucci asked plaintiff to explain the changes in his estimates and to answer specific questions about the program. When plaintiff provided his response on March 16, 2010, his estimate of the revenue for the ISIE4000 program at that time had changed by $127,000 from the previous week. The substantial changes in plaintiff's estimates in 20 days prompted further concerns and questions for Maffucci. Plaintiff concedes that defendants "had concerns about his performance prior to Plaintiff engaging in protected activity." The record establishes that these concerns continued after he filed his complaint on March 8. Plaintiff offers no evidence that these concerns were unjustified. Thus, Maffucci continued to criticize plaintiff's job performance because he was dissatisfied with it, not because plaintiff had reported age discrimination to Burk.

As previously discussed, plaintiff's argument that "the inconclusiveness of who made the decision to terminate Plaintiff and for what reason" did not satisfy his burden to raise a triable issue of fact as to the retaliatory motives of the individuals who decided to terminate his employment. Defendants have conceded that both Burk and Maffucci participated in the decision to terminate his employment and plaintiff has failed to rebut that his job performance was unsatisfactory.

Plaintiff's claim that the timing of his termination established that defendants' reason for termination was pretextual also has no merit. Here, plaintiff's employment was terminated within two and one half months of his initial claim of age discrimination.

17

However, "[w]here the employee relies solely on temporal proximity in response to the employer's evidence of a nonretaliatory reason for termination, he or she does not create a triable issue as to pretext, and summary judgment for the employer is proper. [Citations.]" (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 357.) Thus, here, plaintiff could not rely solely on temporal proximity to create a triable issue as to pretext.

Plaintiff also contends that the "resolution by summary adjudication of the termination alone was improper because the trial court did not adjudicate the discrete factual theories upon which [his] retaliation claim was based." He contends that defendants engaged in a pattern of conduct which constituted an adverse employment action. This conduct not only included wrongful termination, but also "undeserved negative criticisms, refusal to give him the tools to perform his job adequately, harassment, refusal to transfer him, refusal to place him on a [PIP], and acts that caused him substantial psychological harm." However, " '[t]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint.* A "moving party need not '. . . refute liability on some theoretical possibility not included in the pleadings.' [Citations.]" ' " (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 332.) Here, since plaintiff failed to allege these legal theories in his complaint, his contention fails.

In sum, defendants met their burden to show that their actions were motivated by legitimate reasons, that is, plaintiff was unable to perform his job duties satisfactorily. Plaintiff then failed to show that defendants' actions were untrue or pretexts for retaliatory animus. Accordingly, the trial court did not err in granting the motion for summary adjudication of the cause of action for retaliation in violation of the FEHA.

### 3. Retaliation in Violation of Public Policy

Plaintiff challenges the trial court's ruling as to the fourth cause of action for retaliation in violation of public policy.

18

The fourth cause of action alleges that defendants retaliated against him for "having opposed and reported unlawful employment practices based on age, for retaliation for reporting unlawful employment practices, and for retaliation for refusing to engage in and reporting illegal activity." Where a cause of action is duplicative of another cause of action in the complaint, it is superfluous and subject to summary adjudication. (See *Guz*, *supra*, 24 Cal.4th at p. 352.) To the extent that this cause of action is based on termination of plaintiff's employment, it involves the same operative set of facts and remedies as alleged in the third cause of action for retaliation in violation of the FEHA. Thus, the trial court properly granted summary adjudication of this cause of action to the extent that it is based on the termination of plaintiff's employment.

To the extent that the fourth cause of action is based on alleged retaliation for his March 8 and March 18 complaints, plaintiff has failed to cite any authority recognizing the viability of a cause of action for retaliation in violation of public policy when the alleged retaliation did not include termination of employment. Accordingly, plaintiff has waived this issue. (*Badie*, *supra*, 67 Cal.App.4th at pp. 784-785.)

To the extent that the fourth cause of action is based on alleged retaliation for his complaint on April 28, 2010, of alleged illegal activity regarding time records, plaintiff does not identify any alleged acts of retaliation other than termination on May 4, 2010. Thus, as previously discussed, the fourth cause of action is duplicative of the third cause of action to the extent that it is based on termination of plaintiff's employment.

In sum, plaintiff has failed to show that the trial court erred in connection with the fourth cause of action.

### 4. Wrongful Termination in Violation of Public Policy

Plaintiff contends that the trial court erred in granting summary adjudication of his cause of action for wrongful termination in violation of public policy. We disagree.

The fifth cause of action alleges that there is a "public policy against discrimination on the basis of age and for protesting discrimination and against

19

termination of employees who refuse to participate and/or report an activity that would result in a violation of a state or federal statute, or noncompliance with a state or federal rule or regulation." It is also alleged that Intevac terminated plaintiff's employment for complaining about age discrimination, refusing to participate in time-keeping fraud, and reporting time-keeping fraud.

Plaintiff cannot prevail on his cause of action for wrongful termination in violation of the public policy against age discrimination, because this claim is based on the same operative set of facts and remedies as his third cause of action for retaliation in violation of the FEHA. Thus, this claim is superfluous and subject to summary adjudication. (See *Guz*, *supra*, 24 Cal.4th at p. 352.)

Plaintiff also cannot prevail on this cause of action for wrongful termination in violation of a public policy against fraud, because he has failed to identify any specific constitutional, statutory or regulatory provision to support his claim. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 69-80.) Plaintiff's reliance on *Holmes v. General Dynamics Co.* (1993) 17 Cal.App.4th 1418 (*Holmes*) is misplaced. In contrast to the present case, the plaintiff in *Holmes* specifically alleged that the defendant terminated his employment "to silence and punish him for his repeated disclosures of [the defendant's] breaches of its defense contracts, breaches amounting to violations of the federal False Statements Act." (*Holmes*, at p. 1426.)

### 5. Failure to Investigate

Plaintiff's sixth cause of action alleges that Intevac was aware of the discrimination and harassment by Maffucci and failed to investigate plaintiff's complaints. Relying on *Department of Fair Employment and Housing v. Lyddan Law Group* (2010) FEHC Case No. E-200607-A-1082-01, Intevac argues that plaintiff cannot prevail as to this cause of action because there is no private right of action for a violation of Government Code section 12940, subdivision (k).

20

Government Code Section 12940, subdivision (k) provides in relevant part: "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] . . . [¶] (k) For an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

Even assuming that private litigants may state a cause of action for a violation of this statute, plaintiff concedes that a defendant cannot be held liable for failure to prevent discrimination or retaliation without unlawful discrimination or retaliation in fact having occurred. (See *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 288-289.) Here, the trial court properly granted the motion as to plaintiff's retaliation under the FEHA claim. Since there was no violation of the FEHA, the trial court did not err in granting the motion as to the cause of action for failure to investigate.

## 6. Intentional Infliction of Emotional Distress

Plaintiff also contends that the trial court erred in granting summary adjudication of the cause of action for intentional infliction of emotional distress.

"A cause of action for intentional infliction of emotional distress exists when there is ' " " " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' [Citations.] A defendant's conduct is 'outrageous' when it is so ' " " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.] And the defendant's conduct must be ' " " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' [Citation.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051 (*Hughes*).)

21

However, as *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 explained: "An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency. [Citations.] Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." (*Id.* at p. 80.) Here, since defendants' evaluation and criticism of plaintiff's job performance and termination of his employment were personnel management decisions, their conduct did not constitute extreme and outrageous conduct as a matter of law. Thus, defendants were entitled to summary adjudication of the cause of action for intentional infliction of emotional distress.

Plaintiff's reliance on *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101 (*Cabesuela*) is misplaced. In *Cabesuela*, the plaintiff filed a first amended complaint alleging, among other things, wrongful termination in violation of public policy and intentional infliction of emotional distress. (*Id.* at p. 106.) The trial court sustained the demurrer to the cause of action for wrongful termination in violation of public policy on the theory that it was barred by the exclusive remedy provisions of the Workers' Compensation Act. (*Id.* at p. 112.) This court concluded that the trial court had improperly sustained the demurrer as to this cause of action. (*Ibid.*) This court also stated that "when an employer's decision to discharge an employee results from an animus that violates [a] fundamental policy, such misconduct cannot be considered a normal part of the employment relationship. Thus, where, as here, a plaintiff's emotional distress claim is premised upon his employer's violation of a fundamental public policy of this state, such misconduct lies outside of the exclusive remedy provisions of the Labor Code. [Citations.]" (*Id.* at pp. 112-113.) However, *Cabesuela* did not consider

22

the issue of whether personnel management decisions constituted conduct that was so "" "" "extreme as to exceed all bounds of that usually tolerated in a civilized community.'" "'" (*Hughes*, *supra*, 46 Cal.4th at p. 1051.) "[C]ases are not authority for propositions not considered." (*McDowell & Craig v. City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38.) Thus, *Cabesuela* does not support plaintiff's position.

### 7. Violation of Labor Code Private Attorneys General Act of 2004 (Act)

Plaintiff argues that the trial court erred in granting summary adjudication of the tenth cause of action for violations of the Act. He argues that he was not required to exhaust his administrative remedies because he did not seek civil penalties.

Plaintiff alleges that he brought the tenth cause of action "on behalf of himself and other current or former employees affected by the labor law violations alleged in this complaint." It is further alleged that defendants violated the Labor Code[3] by failing to issue properly itemized wage statements (§ 226, subd. (a)) and by failing to keep proper time records (§ 1174, subd. (d)). Plaintiff also alleges that defendants retaliated against him for complaining about their failure to comply with these statutes and he sought "[p]ursuant to Labor Code section 2699 *et seq*. . . . to recover penalties as provided by statute."

Section 2699.3 requires that plaintiffs exhaust their administrative remedies before filing an action when they are seeking to assert specified claims as a private attorney general for violation of provisions listed in section 2699.5. Section 2699.5 states that the "provisions of subdivision (a) of Section 2699.3 apply to any alleged violation of the following provisions: . . . subdivision (a) of Section 226, . . . subdivisions (c) and (d) of Section 1174 . . . ."

Plaintiff does not contend that his claim under section 226, subdivision (a) is not subject to the exhaustion requirement. However, he contends that since he sought

---

3     All further statutory references are to the Labor Code in effect in 2010, unless stated otherwise.

"statutory remedies," rather than "civil penalties," for his claim under section 1174, subdivision (d), he was not required to exhaust his administrative remedies.

Section 1174, subdivision (d) provides in relevant part: "Every person employing labor in this state shall: [¶] . . . [¶] (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than two years." This section did not set forth the remedies for a violation. However, section 1174.5 provides that an employer "who willfully fails to maintain . . . accurate and complete records required by subdivision (d) of Section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500)."

Here, plaintiff sought "[p]ursuant to Labor Code section 2699 *et seq*. . . . to recover penalties as provided by statute." He has not identified, and we have not found, any penalty for a violation of section 1174, subdivision (d) other than the civil penalty in section 1174.5. Since the only remedy for a section 1174, subdivision (d) violation is a civil penalty, plaintiff was required to exhaust his administrative remedies before pursuing this claim. Thus, the trial court properly granted summary adjudication on this cause of action, because plaintiff failed to exhaust his administrative remedies.

*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365 (*Caliber*) supports our conclusion. In *Caliber*, several employees filed a wage-and-hour action against their former employer for several violations set forth in section 2699.5. (*Caliber*, at p. 371.) As in the present case, the plaintiffs argued, among other things, that their action did not seek civil penalties under the Act. (*Caliber*, at p. 377.) *Caliber* rejected the plaintiffs' characterization of their cause of action for a violation of section 1174 and interpreted it as seeking only civil penalties. (*Caliber*, at pp. 379, 381.) The Court of

24

Appeal then held that the plaintiffs were required to plead that they had satisfied the exhaustion requirements of the Act as to that cause of action. (*Caliber*, at pp. 381-382.)

## 8. Unfair Competition

Plaintiff contends that the trial court erred in granting the motion for summary adjudication of the cause of action for unfair competition (Bus. & Prof. Code, § 17200 et seq.).

The eleventh cause of action for unfair competition alleges that defendants' violations of the FEHA and the Labor Code as well as timekeeping fraud constitute unfair competition. The Unfair Competition Law " 'prohibits unfair competition, including unlawful, unfair, and fraudulent business acts.' [Citations.]" (*Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1008-1009.) It " ' "borrows' violations from other laws" ' " and makes them independently actionable under its terms. (*Id.* at p. 1009.) Since we have concluded that the trial court properly adjudicated plaintiff's causes of action alleging violations of the FEHA and the Labor Code as well as timekeeping fraud, plaintiff could not prevail on his unfair competition causes of action as a matter of law. Accordingly, the trial court did not err in granting the motion for summary adjudication as to this cause of action.

## B. Request for a Continuance

Plaintiff contends that the trial court erred when it denied his request for a continuance to conduct discovery. He contends that defendants failed to provide discovery that they had agreed to provide and that he was diligent in pursuing discovery.

We review the trial court's denial of a request for a continuance to conduct discovery under the abuse of discretion standard. (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 930.)

The hearing on the motion for summary judgment was originally scheduled for November 15, 2011. On October 21, 2011, Dru Anne Keegan, plaintiff's counsel,

25

indicated that she wanted to take the deposition of an Intevac corporate representative regarding certain issues, including Intevac's collection and production of documents, and asked if defendants would stipulate to a continuance. The parties then stipulated that the hearing would be continued to January 5, 2012.

Keegan took the deposition of Intevac's corporate representative on November 22, 2011. During the deposition, Keegan asked to meet and confer with Daniel F. Pyne, defendants' counsel, regarding Intevac's production of certain documents.

On December 6, 2011, the parties agreed to continue the hearing on the summary judgment motion to March 20, 2012. The parties also stipulated that "plaintiff shall conduct no further discovery (other than continuation of the pending meet-and-confer process) prior to the hearing of the motion for summary judgment."

On December 20, 2011, Pyne sent a letter to Keegan in which he agreed to produce certain documents, but objected to her request for other documents and explained the basis for his objections. Keegan had requested, among other things, copies of all e-mails containing plaintiff's name. Pyne pointed out that Intevac had already provided a substantial volume of e-mail correspondence, and after consulting with Intevac, he learned that the request would be extremely costly and time-consuming.

On February 26, 2012, Keegan notified Pyne that she wanted to discuss the issues that he had addressed in his December letter, including a forensic examination of Intevac's electronically stored data. The following day, Pyne asked Keegan to identify documents that she thought had not been produced by Intevac. She described an allegedly defamatory e-mail regarding plaintiff, but did not identify the author or provide any other information. On February 28, 2012, Keegan sent Pyne an e-mail in which she stated that she was going to move forward with a forensic examination of Intevac's electronically stored data. Keegan also stated that she wanted the hearing on the motion for summary judgment to be continued. Pyne responded later that day. He stated that

26

Intevac was unwilling to take its motion for summary judgment off calendar to permit plaintiff to conduct further discovery.

On March 1, 2012, plaintiff filed an ex parte application to continue the hearing date on the motion for summary judgment. Defendants opposed the request. The trial court denied the request for a continuance.

Plaintiff has failed to show that the trial court abused its discretion in denying his request for a continuance. First, plaintiff stipulated to refraining from conducting further discovery when the parties agreed to the second continuance of the hearing on the summary judgment motion. Second, if plaintiff believed that defendants had failed to provide discovery, he could have filed a motion to compel further discovery responses. However, he did not. Third, plaintiff has failed to identify specific information that he expected to obtain through additional discovery or how such information would have led to a different result on the motion for summary judgment. Thus, plaintiff's contention fails.

### III.    Disposition

The judgment is affirmed. Costs are awarded to defendants.

_____

Mihara, J.

WE CONCUR:


_____

Bamattre-Manoukian, Acting P. J.


_____

Grover, J.

28